MANUEL JORDÁN ET AL., Plaintiffs and Appellants, *v.* SINDICATO EMPLEADOS EQUIPO PESADO, CONSTRUCCIÓN Y RAMAS ANEXAS DE PUERTO RICO and PUERTO RICO AMERICAN INSURANCE COMPANY, Defendants and Appellees.

No. R-66-92.     Decided January 31, 1968.

*Luis A. Negrón López* and *Luis Muñoz Rivera* for appellants. *Martínez-Muñoz, Agrait-Oliveras & Otero* for appellees.

—O—

*Luis A. Negrón López* and *Luis Muñoz Rivera* for appellants. *Martínez-Muñoz, Agrait-Oliveras & Otero* for appellees.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Santana Becerra, and Mr. Justice Ramírez Bages.

PER CURIAM: In an action for damages filed by Manuel Jordán et al., against the Sindicato Empleados Equipo Pesado, Construcción y Ramas Anexas de Puerto Rico and Puerto Rico American Insurance Company, the Superior Court rendered judgment dismissing the complaint after filing the following

"Findings of Fact

"1. On March 7, 1961, about 3:30 in the afternoon the Opel station wagon license No. 720-521, property of plaintiff Manuel Jordán was being driven by him along Highway No. 2, Km. 29, Hm. 5, in the direction of Vega Alta. His wife, Rodesinda Quirós, accompanied him. His grandchild was in the back seat.

"2. When he arrived at the aforementioned part of the highway, Jordán turned suddenly to his left to enter a service station there. In order to permit Jordán to cross to the other side, a vehicle which was coming in the opposite direction had to stop suddenly.

"3. A vehicle driven by defendant Félix Morales was coming behind the vehicle which stopped suddenly, at a speed of about 35 miles per hour. Said vehicle was property of the Sindicato de Empleados de Equipo Pesado de la Construcción y Ramas Anexas de Puerto Rico, and it was being used in the course of the work which Félix Morales had in said union.

"4. The vehicle driven by defendant Félix Morales passed the vehicle which stopped suddenly, and he tried to apply the brakes forcibly, but the attempt was useless. The result was that the vehicle of defendant Félix Morales, which was a Chevrolet, collided head on against the Opel station wagon of plaintiff Jordán.

"5. As a result of said collision, Rodesinda suffered serious injuries, which caused her death. Her husband, Manuel Jordán, also received serious injuries, but he survived. Plaintiffs' children, Alicia, Felipa, and Olga, also survive." (Original Record, pp. 21, 22.)

The plaintiffs-appellants set forth that the trial court erred (1) in concluding that plaintiff Jordán turned suddenly to his left, without the evidence supporting said conclusion, (2) in not deciding that the accident was due to the

lack of precaution of the driver of defendant's vehicle, (3) in interpreting the evidence presented, and (4) in not applying to this case the doctrine of ordinary negligence.

■ The question to be determined is whether the findings of fact made by the trial court are clearly erroneous, and as a result thereof the judgment of the Superior Court should be reversed or modified.

We believe that the errors assigned by the appellants were not committed.

Although appellant Jordán and the witness Nélido Lozada testified that Jordán was driving very slowly, almost at a halt when he invaded the left lane to enter the gasoline station, from his evidence as well as from the evidence of the appellees, there are certain showings which warrant the correction of the judgment rendered by the Superior Court.

The witness Lozada, who when he spoke for the first time with Jordán about the accident, told the latter that he had not witnessed it, testified that Jordán stopped for about one second to invade the left lane, and that it was a head-on collision between both vehicles, close to the white line which divides the highway.

Jordán himself testified that to turn to the left "I almost stopped, I was at a standstill, at a distance more or less, moving slowly." He continues testifying that he saw a car that was coming head on and he "made a dead stop," and then he invaded the left lane. He admits that the collision occurred head on, the highway was straight, the visibility was good, and there was nothing which precluded him from seeing the vehicles which were approaching from Vega Baja. In another part of his testimony he says:

"I saw the car which let me pass, which gave me the right of way. From here to the door more or less, a bit beyond the door, then I tried to enter and did so, when suddenly another car came out unexpectedly.

"Q. At the moment the other car lets you pass and the collision was almost simultaneous?

"A. Well, we could say so.

"Q. Is that your best description?

"A. We can say so."

He also testified that for a fraction of a second he realized what was going to happen, when he saw the other car.

"Q. At what distance did you see for the first time the other vehicle which collided with you?

"A. At what distance did I see the other vehicle? Seeing it and colliding with it was almost the same thing."

On his part Morales, driver of the vehicle which was the property of the defendant-appellee, testified that he was driving along his right lane from Vega Baja to Bayamón at a slow speed (he had testified before the prosecuting attorney that he was going at 35 miles per hour), when the other car appeared in his lane facing him, he applied the brakes, and awoke when his knee was being treated in Vega Baja.

■ From the oral and documentary evidence as a whole, it is inferred that this unfortunate accident occurred as a result of the negligence of driver Jordán, upon invading the left lane without taking the due precautions to avoid an accident. The trial judge had grounds in the evidence to reasonably infer that Jordán entered the left lane suddenly, which made the other vehicle, which was coming from the opposite direction, "make a dead stop," thus producing the collision with the vehicle driven by Morales, simultaneously with the invasion of his lane by the vehicle driven by Jordán.

In view of this consideration, the judgment, which is object of review, must be affirmed.

—O—

ON MOTION FOR RECONSIDERATION

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Santana Becerra, and Mr. Justice Ramírez Bages.

San Juan, Puerto Rico, April 30, 1968

PER CURIAM : This case involves a claim for damages as a result of a collision between an Opel automobile driven by appellant, Manuel Jordán, and a Chevrolet station wagon property of appellee union, driven by Félix Morales while in official business of said union, in which collision the wife of the aforesaid appellant died and he suffered severe injuries consisting of multiple fractures of the bones of the nose including the bridge of the cartilage of the nose which required plastic surgery and hospitalization during ten days. He also suffered a contusion on the chest and wounds on the left knee and shin and on a hand, and on the eyelids, which had to be sutured.

We affirmed the judgment of the trial court dismissing the complaint in this case on January 31, 1968, because we concluded that "The trial judge had grounds in the evidence to reasonably infer that Jordán entered the left lane suddenly, which made the other vehicle, which was coming from the opposite direction, 'make a dead stop,' thus producing the collision with the vehicle driven by Morales, simultaneously with the invasion of his lane by the vehicle driven by Jordán."

Appellants have requested this Court to reconsider our judgment of January 31, 1968, affirming the judgment appealed from on the grounds that the conclusions of law of the trial judge are contrary to his own findings of fact.

After examining the record anew we find that:

1. Jordán was driving along highway No. 2, Km. 29, Hm. 5 toward Vega Alta in his Opel vehicle accompanied by his wife and his granddaughter sitting in the back. At that place the highway has two lanes divided by a white line.

2. Jordán tried to enter a service station to the left at that place and for that purpose he made the corresponding hand signal and proceeded to turn slowly.

3. A vehicle which came in the opposite direction made a "dead stop," Jordán says, to let him pass, remaining at about "the distance of this room" (the courtroom of the trial court) from the place where Jordán was entering the left lane. Necessarily to bring the car to a "dead stop" does not mean that the stop was suddenly made but rather that it was complete, until the vehicle ceased moving, for if it had been suddenly made said vehicle would have remained very near Jordán's which was crossing by the front and not at a distance of "the courtroom" which might be of 20 to 30 feet.

4. Félix Morales was driving his vehicle behind the one which stopped to let Jordán pass. Instead of stopping as the one in front did, Morales "went beyond" the latter. In order to do that he must have necessarily occupied part of the walk of the highway without decreasing his speed of 35 miles per hour for he left signs of having skidded on the gravel when applying the brakes, going out of the walk towards the road where he collided head on with Jordán's vehicle which was crossing the left lane of the highway at that place.

5. It is obvious that if Morales had been minding the traffic, necessarily he would have realized in time that the vehicle in front had stopped to let Jordán's pass. On the contrary he realized the situation too late and in not timely reducing the speed he had to swerve to the right, "go beyond" the stopped vehicle, and continue partly along the walk of the highway until colliding with Jordán's vehicle.

6. When Jordán began to make his turn he must have noticed that two cars were coming from the opposite direction, that one stopped and the other did not, and therefore, as he was going slowly, he should have stopped to ascertain what Morales was going to do. He was negligent in not becoming aware of the proximity of Morales' vehicle until it was too late.

7. The proportion in which appellant Jordán's negligence contributed to the occurrence of the accident has been of 40%.

8. The parties stipulated that the moral damages suffered by Jordán and his daughters Alicia, Felipa, and Olga Jordán Quirós are the damages normally suffered by a father and daughters in a close family when an accident and a death, like the one in this case, occur.

9. The damages sustained by appellants are the following:

(a) For appellant Jordán's injuries and the resulting sufferings—$7,500.

(b) For Jordán's moral suffering as a result of the loss of his wife—$20,000.

(c) For the moral suffering sustained by Alicia, Felipa, and Olga Jordán Quirós, as a result of their mother's death—$10,000 to each.

10. Due to the fact that Jordán's negligence contributed in 40% to the occurrence of the accident, the amount of the damages sustained by Jordán, indicated in the foregoing paragraph should be reduced to 60% of the amount indicated in the preceding subparagraphs (a) and (b). *Flores v. F. & J. M. Carrera, Inc.*, 83 P.R.R. 320 (1961).

11. No amount is awarded for the loss of Jordán's vehicle because neither its value at the time the accident occurred, nor the residual value thereof after the accident, was alleged or established. Neither were the medical and hospitalization expenses alleged nor established. It was not established that Armando Santoni, Olga Jordán Quirós' husband, suffered any damages as a result of the aforesaid accident.

12. $3,000 should be granted for attorney's fees.

13. The liability of the insurance company is limited to the maximum of $20,000 prescribed by its policy plus $3,000 for attorney's fees previously indicated plus the corresponding costs.

In view of the foregoing, the judgment rendered in this case by this Court on January 31, 1968, will be set aside, the judgment rendered by the trial court will be reversed, and another rendered ordering the parties to pay appellants the

amounts for damages and attorney's fees and costs previously indicated.

Mr. Justice Pérez Pimentel dissented in a separate opinion.

—O—

MR. JUSTICE PÉREZ PIMENTEL dissenting, on reconsideration.

San Juan, Puerto Rico, April 30, 1968

I dissent on the grounds set forth in the original per curiam opinion and on the additional grounds which I turn to explain.

The accident occurred almost at the middle of the highway. Jordán had invaded his left lane along which the vehicle driven by Morales was traveling. Jordán was not going to cross that lane perpendicularly. According to his own testimony he was going to continue ahead along the lane which did not belong to him in order to turn then to the left where there is a service station. Jordán testified that he saw the vehicle driven by Morales coming but he believed that it was not going to continue along the lane invaded by him. Jordán's lack of precaution was gross. Remember that the impact between the two vehicles occurs, according to Jordán himself, at the same moment when he invades the left lane going from Bayamón to Vega Alta. The right of way along that lane belonged to Morales and not to Jordán. The latter has crossed in front of a vehicle which has stopped to permit him to invade the left lane. Although he sees Morales' vehicle, which according to the findings of the trial judge was going at 35 miles per hour, Jordán does not stop and enters the lane opposite his, that is, along which Morales' vehicle, which was going from Vega Alta to Bayamón, was running. There is no doubt that when Jordán invades the left lane Morales' vehicle is very close to him, for Jordán himself testified that the invasion of that lane and the occurrence of the collision was almost simultaneously. It was a head-on crash. So that

when a vehicle stopped to let him pass Jordán immediately entered the lane which did not correspond to him in order to continue along that lane in the direction of Vega Baja for a short distance in order to enter the service station which is on the left in the Bayamón-Vega Alta direction.

Even if any negligence is imputed to Morales for not having foreseen that Jordán was going to invade his lane despite his proximity to the place where the accident took place, the degree of said negligence would never be greater than that of Jordán. In my opinion, not more than 25% of the negligence, giving Jordán the benefit of the greatest liberality, could be imputed to Morales.